UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD JOSEPH LEGENZA,

    Appellant,

v.                                                       22-CV-835 (JLS)

GINA DEL ROSARIO,

    Appellee.

---

## DECISION AND ORDER

Appellant Richard Joseph Legenza, a debtor, appeals from an order of the United States Bankruptcy Court for the Western District of New York denying him a discharge in bankruptcy. For the reasons below, the Bankruptcy Court order is AFFIRMED.

## BACKGROUND

The following facts are taken from the record of the Bankruptcy Court.[1] This case concerns a loan that Gina Del Rosario, the plaintiff in the underlying adversary proceeding and the appellee here, made to Legenza for the purpose of developing a casino-based game called "Wild Aces." On April 3, 2015, the parties executed a Loan and Royalty Agreement (the "Agreement") in which they acknowledge a loan in the amount of $70,000. *See* Bankr. Dkt. 47-1. Under the

---

[1] Citations to the docket of the underlying bankruptcy case (No. 21-1036) will be cited as "Bankr. Dkt." Citations to the appellate docket in this case will be cited as "Dkt."

Agreement, Legenza assigned to Del Rosario a percentage of royalties he would receive from licensing the game. *Id.* According to Legenza, the "money received from [Del Rosario]" was "not deposited in a bank but was maintained as cash." Bankr. Dkt. 51-1 ¶ 21. Legenza "maintained a bank account solely to render payment to [Del Rosario] from the revenue received" from the "sole location in which Wild Aces was being played." *Id.* He also kept a "record of the case" in a "cash journal" along with "other business papers." *Id.*

On June 3, 2020, Del Rosario commenced a civil action against Legenza in Nevada state court alleging claims of breach of contract and fraud. *Id.* ¶ 19. While that case was pending, Legenza filed for bankruptcy United States Bankruptcy Court for the Western District of New York. *See id.* ¶ 20. On November 22, 2021, Del Rosario commenced this adversary proceeding requesting that the Bankruptcy Court deny Legenza discharge in bankruptcy. *See* Bankr. Dkt. 1. Del Rosario moved for summary judgment, seeking "a judgment on Count III of her Amended Complaint, determining that [Legenza] is not entitled to a discharge under 11 U.S.C. § 727(a)(3)" because Legenza failed to preserve recorded information from which his financial condition or business transactions might be ascertained. *See* Bankr. Dkt. 47 at 7. Legenza responded in opposition to Del Rosario's motion and cross moved for summary judgment. Bankr. Dkt. 51, 52, 53. Del Rosario replied. Bankr. Dkt. 62, 63.

On October 20, 2022, Chief United States Bankruptcy Judge Carl L. Bucki issued a Decision and Order granting Del Rosario's motion for summary judgment

and denying Legenza's cross motion. *See* Bankr. Dkt. 67. The court concluded that Legenza "will be denied a discharge" pursuant to 11 U.S.C. § 727(a)(3). *Id.* at 5. And because "the denial of discharge renders moot" Del Rosario's remaining causes of action, the court ordered that the adversary proceeding be closed. *Id.*

On November 3, 2022, Legenza filed a notice of appeal with this Court seeking review of that October 20, 2022 Decision and Order. Dkt. 1. Legenza filed a memorandum in support of his appeal, arguing that the "Order of the Bankruptcy Court should be reversed" because the court "should have given a closer examination—a trial—in order to properly consider whether an across-the-board denial of a discharge was a fair and just remedy." *See* Dkt. 9 at 38-39. Del Rosario opposed, *see* Dkt. 10, and Legenza replied. Dkt. 13.

## DISCUSSION

### I.   JURISDICTION & STANDARD OF REVIEW

Under 28 U.S.C. § 158(a), "district courts of the United States" have "jurisdiction to hear appeals . . . from final judgments, orders, and decrees; . . . [and] with leave of court, from other interlocutory orders and decrees . . . of bankruptcy judges." 28 U.S.C. § 158(a)(1), (3). A district court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Ehrenfeld*, No. 19-CV-8718 (RA), 2020 WL 5758819, at *2 (S.D.N.Y. Sept. 28, 2020) (internal citation omitted).

The "Bankruptcy Court's legal conclusions are reviewed *de novo* and its factual conclusions are reviewed for clear error." *In re Hyman*, 502 F.3d 61, 65 (2d

Cir. 2007). *See also In re Bayshore Wire Products Corp.*, 209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy Court's findings of fact for clear error . . . [and] its conclusions of law *de novo*"). Where, as here, an "appellant challenges a grant of summary judgment, the appellate court reviews the lower court's ruling *de novo* because the determination that there are no genuine issues of material fact is a legal conclusion." *In re Jacobowitz*, 309 B.R. 429, 435 (S.D.N.Y. 2004) (citing *FDIC v. Giammettei*, 34 F.3d 51, 54–55 (2d Cir.1994)).

## II. APPLICABLE SECTION OF THE BANKRUPTCY CODE

The Bankruptcy Court denied discharge pursuant to 11 U.S.C. § 727(a)(3), which pertains to recordkeeping. Section 727(a)(3) provides that:

> the court shall grant the debtor a discharge, unless . . . the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

The "purpose of § 727(a)(3) is to give a creditor and the Bankruptcy Court complete and accurate information concerning the status of the debtor's affairs and to test the completeness of the disclosure requisite to a discharge." *In re Erdheim*, 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996) (quoting *In re Artura*, 165 B.R. 12 (Bankr. E.D.N.Y. 1994)).

To "implement this record-keeping requirement," Section 727(a)(3) requires "a two-step approach." *In re Cacioli*, 463 F.3d 229, 235 (2d Cir. 2006). The "initial burden lies with the creditor to show that the debtor failed to keep and preserve any

4

books or records from which the debtor's financial condition or business transactions might be ascertained." *Id.* The "test is whether there is available written evidence made and preserved from which the debtor's present financial condition, and his recent business transactions for a reasonable period in the past, may be ascertained with substantial completeness and accuracy." *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000). The court has "reasonably wide discretion in determining whether the produced records satisfy the statutory requirements of Section 727(a)(3)." *In re Shapiro*, 59 B.R. 844, 848 (Bankr. E.D.N.Y. 1986).

If the "creditor shows the absence of records, the burden falls upon the bankrupt to satisfy the court that his failure to produce them was justified." *In re Cacioli*, 463 F.3d at 235. The Bankruptcy Code "does not define what constitutes justification for a failure to maintain records under § 727(a)(3)." *Id.* But the Second Circuit instructs that, "whether a debtor's failure to keep books is justified is 'a question in each instance of reasonableness in the particular circumstances.'" *Id.* (quoting *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)). In particular, "an inquiry" into several factors "is appropriate to the extent that the factors are relevant to the debtor's stated justification." *Id.* Those factors include "the education, experience, and sophistication of the debtor; the volume of the debtor's business; the complexity of the debtor's business; the amount of credit extended to debtor in his business; and any other circumstances that should be considered in the interest of justice." *Id.* (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230

(3d Cir. 1992)).[2] In sum, "a debtor's stated justification will satisfy § 727(a)(3) if enough evidence exists to convince the court of [the debtor's] good faith and businesslike conduct." *Katsiroumbas v. Suits*, 600 B.R. 472, 479 (N.D.N.Y. 2019) (internal citation omitted).

## III. ANALYSIS

The undisputed facts show that Legenza failed to keep or preserve records from which his financial condition or business transactions might be ascertained, and that such failure was not justified under the circumstances. Therefore, the Bankruptcy Court properly granted summary judgment under Section 727(a)(3).

### A. Failure to Keep or Preserve Records

Del Rosario argues that she "satisfies the first step of § 727(a)(3) because Legenza has already admitted that there are no books, bank statements, accounting records, tax records, receipts, invoices, bills, or 'cash journals' to ascertain his business." Bankr. Dkt. 47 at 20. As discussed below, Del Rosario has satisfied her initial burden.

---

[2] The Court rejects Legenza's argument that the Bankruptcy Court should have applied the standards set forth in *In re Brenes*, 261 BR 322, 329 (Bankr. D. Conn. 2001) to assess justification. *See* Dkt. 9 at 13-17; Dkt. 13 at 14. The test in *Brenes* is derived from *In re Sethi*, 250 B.R. 831, 838 (Bankr. E.D.N.Y. 2000), which articulated factors relating to the first prong of the test—*i.e.* "whether the records produced by the debtor are sufficient." *In re Sethi*, 250 B.R. at 838. Indeed, the Second Circuit recognizes that "some courts seem to mix up the creditor's proof of whether the debtor failed to keep records with the debtor's proof of justification." *In re Cacioli*, 463 F.3d at 236 (internal citation omitted). This is "problematic because different parties have the burden of proof on the statutory elements of lack of records and of justification." *Id.* As such, this Court declines to apply that test to assess justification.

According to Legenza, he maintained a "record of the case" in a "cash journal." *See* Bankr. Dkt. 51-1 ¶ 21.[3] Indeed, the information "contained in the ... cash logs could have assisted the Bankruptcy Court in determining the accuracy of [the] debtor's reported income." *Bordonaro v. Fido's Fences, Inc.*, 565 B.R. 222, 231 (E.D.N.Y. 2017). But Legenza states that the "cash journal" was lost when he moved from Las Vegas to Western New York. *See* Bankr. Dkt. 51-1 ¶ 21. Beyond that, the record is devoid of anything to show how the loan proceeds were spent.

Legenza purports that, although the cash journal is missing, "the expenses involved in [his] marketing and sales of Wild Aces" are "reasonably reproducible" based on his "recollection of [his] activities." *Id.* ¶ 22. But even if that is true, Legenza's mental reconstruction of his transactions is not an adequate substitute for actual records, as a creditor is "not required to take the debtor's word as to his financial situation." *In re Shapiro*, 59 B.R. at 848. *See also In re Switzer*, 55 B.R. 991, 997 (Bankr. S.D.N.Y. 1986) ("When a debtor fails to preserve or keep documentary evidence to explain the debtor's financial condition[,] the creditors and the court need not be required to guess what actually occurred because such speculations do not serve as an adequate substitute for credible proof"); *In re Jacobowitz*, 309 B.R. at 438 ("Where the debtor is under a duty to keep or preserve

---

[3] This Court, like the Bankruptcy Court, "accepts the credibility of [Legenza's] representation of facts," *see* Bankr. Dkt. 67 at 3, as it is a "settled rule that '[c]redibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal citation omitted).

7

records, a party objecting to discharge need show only that it cannot ascertain the debtor's financial condition and recent business transactions *from the records provided*") (emphasis in original).

Thus, because Del Rosario demonstrated that Legenza failed to produce "written evidence" from which his "present financial condition" may be "ascertained with substantial completeness and accuracy," *In re Sethi*, 250 B.R. at 838, she satisfied her initial burden.

### B. Justification

Legenza has not adequately justified his failure to keep or preserve records. He testified that the reason he cannot produce records regarding expenditure of the loan is that a moving company lost his "cash journal" after he "entrusted" it to the company upon relocating to Western New York. *See* Bankr. Dkt. 51-1 ¶ 21. Because the undisputed facts show that Legenza did not act reasonably under the circumstances, denial of discharge is warranted.

Legenza acknowledges that "the amount owed to [Del Rosario] was significant." Dkt. 9 at 14. *See also* Bankr. Dkt. 47-1 (specifying a loan in the amount of $70,000). Yet he chose to maintain the funds "as cash." Dkt. 51-1 ¶ 21.[4] The fact that Legenza chose to keep the funds as cash does not, by itself, warrant to denial of discharge under Section 727(a)(3). *See Meridian Bank*, 958 F.2d at 1230

---

[4] Legenza knew how to open and maintain a bank account, given that he "maintained a bank account solely to render payment to [Del Rosario] from the revenue received" from the "sole location in which Wild Aces was being played." Bankr. Dkt. 51-1 ¶ 21.

8

(the "Bankruptcy Code does not require a debtor seeking a discharge specifically to maintain a bank account" or "an impeccable system of bookkeeping"). But fatal to Legenza's request for discharge is that he failed to safeguard the "cash journal" in which he documented his transactions. *See In re Switzer*, 55 B.R. at 997 ("Implicit in the duty to produce records reflecting his financial condition is the obligation to take reasonable precautions for the preservation of these records"). Legenza concedes that it was "error" to place the cash journal "in the hands of the movers who brought all his family's personal property from Las Vegas to Western New York." Dkt. 9 at 15. And because there are no bank statements or anything else documenting his transactions, he knew he would be—and is—left with nothing but his memory to show how the funds were spent.

As the Bankruptcy Court in this case observed, the "unintended destruction or loss of documents may at times justify an inability to produce certain financial records." Bankr. Dkt. 67 at 5. But the relevant caselaw does not support excusing the loss of documents here. In *In re Buzzelli*, 246 B.R. 75, 107 (Bankr. W.D. Pa. 2000), the court concluded that "the fact that the debtor has geographically moved on one or several occasions does not, by itself, provide any justification for the loss of recorded information such as the debtor's business records given that a prudent person would take proper precautions to ensure against such loss." Thus, "if any documentation was lost during geographical moves by the debtor and the debtor wished to offer a justification for such loss, the debtor needed to demonstrate to the Court that such loss occurred for a reason *other than the debtor's mere failure to*

9

*take proper precautions against such loss.*" *Id.* (emphasis added). Here, Legenza fails to demonstrate that the loss of his records occurred because of anything other than his imprudent decision—under the circumstances—to entrust them to the moving company. *See also In re Switzer*, 55 B.R. at 998 ("the storing of savings bank passbooks in the glove compartment of an automobile and their subsequent disappearance, coupled with an unexplained inability to produce any documentary evidence to trace the movement of the funds in the savings accounts, defies credulity").

The cases Legenza relies on in support of his position are distinguishable. In *In re Kirst*, 37 B.R. 275 (Bankr. E.D. Wis. 1983), the court declined to deny discharge under § 727(a)(3) to a debtor who "explained that on *four separate occasions* during one year, he was required to move, and that during the course of packing, unpacking and moving, some records were lost." 37 B.R. at 277 (emphasis added). But despite the loss, the debtor was able to "produce books and records of the [business] venture" including "the partnership agreement, financial statements and financial projections." *Id.* Here, Legenza chose to maintain funds in cash, and then place the only record of his transactions in the hands of movers during a single cross-country move.[5]

---

[5] The Court rejects Legenza's explanation that he "was not considering bankruptcy at the time" of the move. *See* Dkt. 9 at 15. An "honest belief by a debtor that he did not need to keep records does not constitute justification for failing to keep or preserve records under § 727(a)(3)." *In re Antoniou*, 527 B.R. 71, 81 (Bankr. E.D.N.Y. 2015) (collecting cases).

10

Further, in *Matter of Martin*, 554 F.2d 55 (2d Cir. 1977), the court concluded that "it was error to hold the bankrupt strictly responsible regardless of fault for the loss of his checkbook stubs." 554 F.2d at 57. The court recognized that one purpose of denying discharge is to "deter inadequate record-keeping," and explained that "any prophylactic function to be performed" is negated "where records have been lost or destroyed *through no fault of the bankrupt.*" *Id.* (emphasis added). Here, Legenza admits that the loss of his documents is at least partially his fault. *See* Dkt. 9 at 15 (Legenza's "error was in placing his financial and marketing records in the hands of the movers. . . ."). Denial of discharge, therefore, would advance the "prophylactic function" of deterring similarly careless behavior.

In addition, the nature of Legenza's "education, experience, and sophistication" indicates that his conduct was unreasonable. *See In re Cacioli*, 463 F.3d at 235. Legenza testified that he is "experienced in the casino gaming industry" and, having previously "created a game that was accepted at a number of venues," he knows "what is required to prove" that a game is "viable and profitable." Bankr. Dkt. 51-1 ¶ 28. Despite his "extensive experience," Dkt. 9 at 15, in the casino industry, Legenza failed to take reasonable steps to create and maintain business records.[6] *See In re Jacobowitz*, 296 B.R. at 672 (denying bankruptcy discharge to "an experienced salesman who had been in business for many years" and "knows the value of maintaining adequate records"); *In re Bujak*, 86 B.R. 30, 33

---

[6] Legenza claims it "did not occur to him" that "that using a checking account rather than keeping cash and a cash journal would ultimately have allowed easier reproduction of records." *Id.*

11

(Bankr. W.D.N.Y. 1988) ("While the Debtor's obvious lack of business acumen dictates that he not be held to a sophisticated or extensive bookkeeping regime, still a modicum of documentary evidence relating to his financial condition is reasonably expected"); *In re Shapiro*, 59 B.R. at 850 (concluding that the "debtor's failure to keep financial records for his business is inexcusable" where his "testimony . . . reveals his sophisticated knowledge of the trucking business and common industry practices"). It is not enough that Legenza might not be "particularly skilled in accounting or bookkeeping." *See* Dkt. 9 at 15. Indeed, failure to "keep *any* meaningful financial records or document important business transactions cannot be justified on the basis of inexperience or lack of education." *In re Artura*, 165 B.R. at 15 (emphasis in original).

Further, the Court is not persuaded by Legenza's argument that "the volume" of his business "was very limited as was its complexity," which required "minimal record keeping." *See* Dkt. 14 at 18. The "fact that a business is small does not, by itself, justify failure to keep records." *In re Moreo*, 437 B.R. 40, 52 (E.D.N.Y. 2010) (citing *Meridian Bank*, 958 F.2d at 1232). *See also In re Finnimore,* No. 09-31497 LMW, 2013 WL 1723705, at *7 (Bankr. D. Conn. Apr. 22, 2013) ("The record keeping requirements of the Business were not unduly complex but that does not excuse the absence of records here"). And the fact that only "minimal record keeping," was required, Dkt. 14 at 18, but Legenza failed to do it, further undermines his position.

In sum, the circumstances of this case do not justify Legenza's failure to maintain business records. This Court recognizes that Section 727 "imposes an extreme penalty for wrongdoing" and, as such, the Second Circuit requires that "it must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *In re Adlman*, 541 F.2d 999, 1003 (2d Cir. 1976)). But "a bankruptcy discharge is a privilege, not a right." *In re Antoniou*, 527 B.R. at 78. And although the "result may be harsh, '[c]omplete disclosure is in every case a condition precedent to the granting of the discharge, and [ ] such a disclosure is not possible without the keeping of books or records.'" *Id.* at 78 (quoting *Underhill*, 82 F.2d at 260)).

## CONCLUSION

For the foregoing reasons, the Court AFFIRMS the October 20, 2022 Order of the Bankruptcy Court.

SO ORDERED.

Dated:   July 26, 2023
         Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE